for admission to the Bar of Good Standing High School of Texas. Thank you. I approved the admission of Juliet Mitchell-Durba, who is a member of the Bar of Good Standing High School of Texas. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. And I'd just like to say, first of all, that Juliet's husband is named Matt, her only brother is named Jeffrey, and she has yellow labs. So ours was a match made in heaven. And it's been an absolute pleasure to have her with us for the past year. She is a smart, talented, and really charming young woman, and we wish her all the best. And we look forward to her continuing presence in the Bar. Thank you. If there's a motion, you would step to the clerk. The clerk will administer the other comments. I did raise your right hand. Do you swear or affirm that you will report yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations, and welcome to the Bar of the United States Court of Appeals. Thank you. All right, well, let's begin, then, with number 2008, the ruling of Blue Pass against income at all. Good morning. We're observing eight minutes since I have a number of responses that I have to make to the appellees. You should be free to allocate the time as you'd like, but keep in mind that we do enforce the rule that no new arguments can be made on the bar, so you can only respond to arguments made. So if you have something affirmative that you want to say, say it in your own time. I'd just like to say that this is not an exceptional case, as this court has typically found them in the past. And it's not an exceptional case because it's not a patent application that would prosecute and benefit, that would normally invalid that. To this day, the patent is still valid. It's not a case that's unfamiliar to this court, as this is the third time it's been before the federal circuit. Prior time, there was a motion for summary judgment that this court affirm. But prior to that, there was a complaint construction that this court ruled in our client's favor of having to do with the electronic multi-purpose card that was used for holding credit card information. This is not a case where an attorney's fee should be awarded because the litigation misconduct is really not misconduct at all. It was really kind of the rough and tumble of general litigation, which goes on as at no time was e-pass ever sanctioned by the magistrate judge or the district court judge. And in fact, there was a motion to hold the attorneys responsible for the attorney's fees. And the district court judge said, no, look, the activity, this rough and tumble stuff that goes on, did not rise to the level of sanctionable conduct. And what's the standard of review? The standard of review is clearly erroneous with regards to whether or not the case is exceptional. It is perhaps a little bit lower when it comes to whether or not the district court apportioned the attorney's fees properly to the alleged misconduct, which is another point in our brief that we're arguing. So there are two issues before this court. So your suggestion here would go through, I mean, the district court would be excruciating detail, not minding the various conduct at the various stages of the litigation. We're supposed to say this falls on the side of rough and tumble litigation versus the other side of litigation misconduct. Is that what you're asking? No, I am not at all. But I am saying that it's a very dangerous thing to say litigation misconduct is a lot, that you just weigh over the entire proceeding and say, because there were these instances of litigation misconduct, now all of the attorney's fees should be awarded. But rather, if there is litigation misconduct, then the attorney's fees that flow from that litigation misconduct should rightly be awarded perhaps during the proceedings, as opposed to trying to wait and later on say, well, the totality of all this adds up to making the case exceptional.  I can see where if there was a finding that there was not a proper pre-filing investigation, and then all of the fees that flow from it, that's not this case. The court did say, well, maybe there's a dubious determination of maybe it wasn't done as well, but there was a pre-filing investigation. And on that basis, the court did not rely upon the fact that there was an improper pre-filing investigation, but rather said that there's this litigation misconduct. And we believe that this is not the type of case where attorney's fees should be awarded. The only American rule that this court has supported is that prevailing parties should pay their own attorney's fees. And here, this is a case where the plaintiff at all times in good faith, objectively good faith, believed that there was an infringement, and at no time was it objectively based. They had some arguments. They prevailed before this court on, with regards to the scope of the claims. And in the end, this court did find that, well, wait a second, maybe there wasn't any customer who's actually infringing, and so there could be inducing infringement. And therefore, that you lose. I understand that. That's unfortunate, but that does not make this case objectively baseless. There's a basis to argue. So in your briefing, you relied heavily on the CES and the Visa in-house demonstrations to show some good faith basis to maintain this litigation. But those two things or those two events occurred, at least with respect to the Palm defendants, after the complaints were filed. Yes, that is correct. Could that provide a good faith basis for maintaining the litigation against the Palm defendants, the first-file suit? If this were a case about whether or not there was an adequate pre-filing investigation, that's an excellent question, and nevertheless, a question that needs to be responded to. And the point of this is, it's about the maintaining of the suit, which the court found to be a problem. And the fact that those exhibits occurred and those demonstrations occurred, where you have basically the CEO of Palm standing up at the larger consumer electronics show and saying, this thing, this device made by Palm, with the software which of course the Palm stores now access and the national controls, with Visa, we're coming together and we're rolling this out. We're going to make this available across the country. This is a real McCoy. This is not a simulation. We're actually doing this. But again, how does that relate to the suit that was filed a year before those demonstrations? There was a belief, because of the circumstantial evidence on counsel and the client, that there was actually infringement going on, that they were in development. And surely, they were in development, and of course, the proof is in the pudding that they did come out with a demonstration. They were going to roll out this combination of massive infringement that, if not stopped, obviously our client's rights to his intellectual property. The rights preclude others from doing something would be eviscerated. First, this is symptomatic of the problems that the district court seemed to have with this case throughout. And that is the sort of general gloss on all activities, all forms of conduct as being applicable to all different defendants relating to all different times, without any attempt to sort of specify, this defendant did this on this date, and that raises a question of infringement, or that defendant did this on a different date, et cetera. General statements don't help elucidate exactly what's going on. And consistent with that, I noticed, for example, in your brief on page 25, at the top, you say, I'll give you a minute to find it. You say, the district court even acknowledged that E-pass' pre-finding investigation did not make the case exceptional, citing the district court's opinion in appendix 26. I can't find that in the district court's opinion. If I read from page 26 of the district court's decision, it says, while E-pass' minimalist pre-finding investigation in and of itself may not make the case exceptional, when combined with the litigation's conduct, the case becomes one which is meritorious to the court of attorney's fees. Yeah, that's in the context of the discussion with respect to Visa International. Yes. But that's not a statement made in the context of the other defendants and the other suits. And it's not a statement that says, that acknowledges that E-pass' pre-filing investigation did not make the case exceptional. Well, I have to interpret from the district court's decision that the district court did not say, with regards to the Powell defendants, you do not give adequate pre-filing investigation. And so I'm assuming in the absence of that statement that the district court did not find them. It seems like the court primarily relied upon not a lack of pre-filing investigation, but really on the litigation's conduct which had to do with things like, well, you're given the opportunity to take discovery, you didn't take discovery, gave you more time to get more evidence, you didn't do that, said you moved for a cross-motion for summary judgment, you didn't do certain things, and you kind of delayed the case, but again, it's- Again, you're making sort of sweeping general statements. If you turn again to the district court's opinion, at appendix page 840 and 841, the statement is set forth there, there is no evidence that any Palm 7, Zier, Tungsten, or Trio have ever been used to practice the 3-11 method. This raises a serious question as to the adequacy of any pre-filing investigation by E-pass. Does that square with the statement you made in your brief? It squares with my statement in the brief in that with regards to one device versus the other device that was demonstrated at the show, that it could well be that there were certain devices that there was no evidence or information of a pre-filing investigation on those devices. Perhaps those devices came out subsequent to the case was filed. I don't know of a particular point, but it seems to me when I read that decision and I read the point, that the issue was not the lack of pre-filing investigations, because a lot of the Palm devices and Palm softwares that came out were different versions or upgrades of what was previously looked at as part of the pre-filing investigation. I think counsel, including our appendix, submitted a declaration to the district court talking about what his pre-filing investigation was with regards to the Palm earlier device and the software that was in it. What was your case against Visa USA? The case against Visa USA was that Visa USA was in the process of rolling out a system where instead of having a credit card, you'd have all your credit cards, including the Visa credit card in your Palm device, and then you would basically select the Palm, the Visa card, and put in your access code, and then you would transact business using this electronic multifunction card. Visa was in the process, as they stated at the CES electronic show, kind of like a Steve Jobs would be standing at the Mac show saying, here's what we're rolling out, here's what we're doing. This is Visa USA? This is Visa International. Yeah, that's why I'm really trying to piece apart. That is confusing to us, too, in a sense, because Visa International and Visa Inc., they share the same headquarters, they share the same counsel, they merged together, and now I'm not really sure what their stats are, but they did notify the court that they were merged together, one and the same. And so whether or not Visa International and national people were at this trade show with the Visa USA people, I'm not sure if it's a distinction without a difference, if they're one company now because of the merger. So... Yeah, but whose fault is that? I mean, I think it's important that you ask for extra time to conduct additional discovery with respect to the relationship, and you never took advantage of that opportunity. So you're saying that you're now sort of explaining, well, we don't know what will be responsible. Well, I guess the question is, is there one entity? If they are one entity now, whether or not that is the next difference. And at the time, obviously, they were two separate entities, and prior counsel did not take a discovery that was avoided, but instead was going to rely upon the fact that they were, in essence, highly related companies to one another. That's the argument that we're making. Do you think that's appropriate? As a... Litigation practice. As litigation practice? I mean, that's not fair answer. Well, if they're... You think it's appropriate. If they're using the same counsel, they're all operating, it's a U.S. operation, it's a U.S. trade show, their Visa USA, I understand, is the entity that runs the Visa operation in the U.S. and is occurring in the U.S., it seems to me not a great jumble leap to suggest that Visa USA is somehow involved, especially if it's the same facility and the same orders and the same everything else. Why don't we reserve your public time and we'll hear from the other side. Thank you. Let's see. We have three different counsel. We're going to go over to you. Let me go through mine. All right. So each of you is taking five points. Yes, sir. Mr. Sikorski. Mr. Palmer. Actually, we're going to go in reverse order to the names. Mr. Sikorski. Yes, sir. See, that's already important. Mr. Bailey. Good morning, Your Honors. My name is Edward Sikorski of DLA Piper, and I represent what the briefing calls, refers to the Palm defendants. Specifically, that would include Palm, Palm One, Recon, and Handspring. And to make it perhaps more easy, I do not represent either of the Visa entities, and my clients are not party to that particular lawsuit. And likewise, I do not represent Palm's source, which is now named Access Systems. Your Honors, in obvious opposition to plaintiff counsel's suggestion, we do believe that this case was an exceptional case, and it did warrant attorneys' fees. As indicated earlier a few minutes ago, the court below Senior Judge Jensen did have serious questions about the pre-filing investigation against the Palm defendants in both sequentially the first filed case against Palm and the second filed case against Palm. Again, I'm not party to the Visa action. In addition to that serious question, as the court put it, the more the substance of Judge Jensen's order goes to the lack of discovery efforts by plaintiff's trial counsel and the meandering theories of litigation. So just to be clear on the record, it sounded as though plaintiff's counsel implied as though the CES and in-house Visa demonstrations employed similar software. Again, this is my assumption as to what he was getting at, employed similar software to the allegations of infringement in the very first lawsuit in the year 2000, which, again, preceded both of those shows. I can assure you that the allegations in the first lawsuit, as reflected in plaintiff's first round of infringement contentions, which are found in the appendix beginning in the chart format A368, have nothing whatever to do with the software that, again, allegedly existed on any Palm device at the CES show. Well, let me ask you a clarification about that. As I recall, yours is the Palm 5, too, the Palm 5 device. Yes. That device, the attorney's fees were not appropriate. Correct. Absolutely correct. What was the difference between that and the way we perceived it there versus the Palm 7 and the other devices? If I understand the question correctly, the very first litigation was filed and was asserted only against Palm 7. And in the claim charts that are in that appendix citation, they refer to a website called PalmNet that facilitated some sort of interaction with the user. Again, the allegations died on the vine because soon after this court's first remand, a new round of infringement contentions came out. And by this time, all three suits had been filed. And that's when, again, by this time we're post-CES and visa in-house. At this point, plaintiff Epass introduces claim charts alleging, in part, the CDS show on the Palm 5. And the interesting side of our Palm 5 is that those claim charts were submitted to the parties a couple months after Epass's counsel told the court, to Judge Chagsin, that they would not assert any infringement allegations against the Palm 5. So it's among the litany of issues that the judge had below. So the Palm 5 is, again, alleged to be the device used at the CES show. Again, I prefer not to talk about the visa in-house because I'm not party to that lawsuit. So in that context is where the incitation, I believe, in Judge Jensen's order below, I think at 826, as Your Honor pointed out earlier, is where there's some mention of a pre-filing investigation. But again, that's not my lawsuit. I'm involved in just the other two. I hope that answers your question. In any event, the software, more importantly, this certain website that was relied upon in the very first lawsuit, died on the vine, did not appear in the immediately subsequent round of infringement contentions against, again, all these Palm 7, Zyre, Tungsten, TRIO devices. Instead, by this time, the infringement allegations had morphed to using these devices to access internet websites and do other kind of performances. Again, once again, I should say, not relating anything whatsoever to the purported use by Mr. Yankowski of this Palm 5 device at CES. So it's important, I think, for the Court to realize that there are three distinct lawsuits. And if you compartmentalize each one, the first lawsuit against Palm involved software completely unrelated to the CES show. That theory was abandoned in favor, subsequently, of a new theory involving some sort of website access. And I'll leave it at that. If you want to finish your thought, I have five minutes. I guess, any other thoughts that come from E-PASS's counsel, their argument, I think that pretty much does it for me. Thank you. Now, that's it. Let's see. That one's just... Again, if you would please tell us...  Pardon me, Your Honor. Counsel for Access has kindly asked if I would like an extra two minutes. And I said yes. So if I could take two minutes from Ms. 5, that would be wonderful. E-PASS made a couple of arguments that I'd like to address. First of all, its standard relies on the reasonably disputable language that comes from the Brooke's case. With Brooke's case, so what it says is the case can't possibly be exceptional if infringement is reasonably disputable. However, in the Brooke's case, there was no allegation of litigation misconduct. In fact, Brooke says, absent the misconduct in litigation or in securing a patent, sanctions may be imposed against a patentee only if both the litigation is brought in subject to bad faith and the litigation is subjectively baseless. That case is distinguishable because here the district court found litigation misconduct. This... Can I just move along the same lines you were in agreement with the statement made about the citation to Cereo in the Gregory, I believe. There's a citation to Cereo, which is the first industry, which at least the citation says the standard for exceptional cases where the case was brought in subject to bad faith and the litigation is subjectively baseless. And what's omitted is that portion of that sentence in Cereo that says absence of misconduct.  So the cases that E-PASS relies on are Brooke's, Diego, Cereo U.S., and Forrest's Labs. And in three of those cases, the first three, there is that absent misconduct language, which is omitted. So it's only the case that you look at that you have to show both subjective bad faith and objective bad faith if there is no misconduct. Otherwise, the court looks at whether there is litigation misconduct, vexatious or unjustified litigation, ineffable conduct can be another example. And if it finds with clear and convincing evidence that any of those actions are in the case, it can find an exceptional case. So the standard that E-PASS is applying is a higher standard. This case is really more like the Nielsen case, which is a 2008 case. Exceptional case was based on three grounds, ineffable conduct, frivolous lawsuit, litigation misconduct. And this court did not use the bad faith standard in affirmative finding of exceptional case. It's also like the Beckman case. In the Beckman case, exceptional case was based on litigation strategy of vexatious conduct. And the district court here found that there was a litigation strategy of vexatious conduct. In that case, in the Beckman case, their exceptional case was affirmed. Again, the Beckman court did not use the bad faith standard and said that the district court is in the best position to judge litigation strategy. So here the district court used the correct standard. It found clear and convincing evidence of litigation misconduct and it found exceptional case. And this court should review those factual findings for clear error. There are numerous findings by the court separately with respect to Visa USA and Visa International as to litigation misconduct. That started from the inception of the case. E-PASS's counsel brought up this idea that Visa USA and Visa International are really the same. Well, throughout this case, they were separate entities and we said that early on in the case. The district court allowed E-PASS to do discovery on whether they were the same or different, whether there was any basis for vicarious liability. E-PASS refused to take any of that discovery. And one of the reasons, I think, is that the basis of the suit alleged in the complaint was the two demonstrations, the CES demonstration and also the in-house demonstration at Visa International. And then there was some other ongoing conduct that was alleged that wasn't specified. And Rule 11b-3 was specifically referenced to say that in discovery we'll find out what that conduct is. Early on in the case and really before this case even started, in the deposition of Susan Gordon-Lathrop, a Visa International vice president, in 2001, with respect to the Pond case, her deposition was taken. And there was evidence or testimony in her deposition that these demos were proof of concept, that Visa International or Visa USA was not involved, that only Visa International was involved. Now, you represent both entities. I actually represent both entities. Were they separately represented in trial? No, they were represented by Townsend. Both entities were represented by Townsend. How would the addition of Visa USA have increased the fees under those circumstances? So, well, Visa USA and Visa International were both named in the complaint. Visa USA did not participate in the demonstrations at all. It didn't have anything to do with that. But, and we filed a motion to dismiss to say Visa USA doesn't belong in the suit, a separate entity. Visa USA was kept in the suit and we were never sure what the allegations were as to Visa USA. If the basis of the case was the two demos, Visa USA didn't participate at all. If the basis of the suit is the ongoing conduct unspecified, never clear what that was, we don't know why. So, Visa had to participate throughout the case trying to figure out why are we in this case? Why aren't we dismissed as a separate entity? And so the fees were not just with respect to the demos but also this unspecified conduct. And what happened was that EPAS would shift its theory. Sometimes it would even shift its theory between the motion and the hearing. So it would say, oh, the basis of the case is really the demos. But when that wasn't going anywhere, it would switch and say, oh, no, it's really this unspecified conduct. And if we could only have more discovery, we'd be able to tell you what that is. Well, one thing that seems odd, just to sort of feed back on Judge Weiss' question, is that, as I understand it, the fees assessed and the costs assessed with respect to Visa USA and Visa Union Capital are exactly the same. No. Down to the penalty. Right. But it seems like, based on what you expressed and what the record reveals, the litigation and the arguments and what's done with respect to the two entities would have been somewhat different. They were different in the sense that, with respect – and we always argued separately. Motions were filed separately. With respect to USA and the demos, USA wasn't involved. With respect to Visa International, for example, well, Visa International was there, but the steps weren't performed. It wasn't on an electronic multifunction card, et cetera. Steps weren't performed in the correct order, et cetera. So the arguments were different. But both entities had to participate in three rounds of summary judgment motions, motions to dismiss, motions to compel. And with respect to the summary judgment motions, many times we were trying to figure out, well, what is EPAS really arguing here? If they're arguing this, this is our response. If they're arguing this, this is our response. And as the district court also said, EPAS made no evidentiary submissions in its last or any of its summary judgment motions. So the court was left to analyze for itself whether there was infringement and found that there wasn't. Very well. Why don't we hear the next case? Mr. Oliver. I'm Andrew Oliver, representing the company known as Access Systems Americas, which in most of the court's decisions, I think all of them, was known as Palm Source at the time. I think the court has already hit upon the issues that I want to make sure are absolutely clear, that this is a separate company. There were separate cases. In the case in which Access Palm Source was involved, three devices were accused of infringement. And those were devices manufactured by Palm One, one of the other defendants, for which Palm Source supplied software. And in that case, as referenced in this court's prior decision at 473 at 3rd at 1217, there were three devices called Tungsten, Zire, and Trio, were the handheld devices that were at issue. Palm Source was accused not of making those devices or infringement with respect to them, but just of supplying software and unspecified promotional and instructional materials that were somehow related to those devices. And the reason that this is important is that EPEX has inferred that the litigation misconduct was the basis for all the fees in these cases. With respect to Palm Source, the court awarded Palm Source virtually all of the fees from the exception of the litigation. The court cut out certain categories, and there were certain categories that we didn't request to be reimbursed for. But I note that the court made what appears to us to be very explicit findings, that there was no pre-filed investigation with respect to Palm Source. And at page 844, starting at line 1, the court notes, Given the opportunity to present as evidence, EPAS has identified no direct evidence that the 311 method has ever been practiced on a Palm 7, and it gets to a Zire, a Tungsten, or a Trio of the three devices at issue in the case where Palm Source was a party. And it goes on to state, The non-existence of any direct infringement evidence to be presented at the time of summary judgment leads inexorably to the conclusion that there was no such evidence known to the plaintiff at the time these cases were filed. And for making that point, I just want to make sure it's absolutely clear this was a separate defendant, and there was what we think is a very explicit finding of no pre-filing investigation, and EPAS has not challenged that finding as being a clear error or made any factual challenges with respect to that. Now, I believe, is that all you had?  You have, I think it's your client's file, the motion for Bill 38. The motion now, we have the motion. I think we have not received a response yet to that motion. That was filed fairly recently. Right. Very well. Yeah. I had hoped to file it in advance so we could address it at the hearing if the court wanted to, but our client wanted to give as long as possible to see if EPAS decided to withdraw the appeal as to access. And unfortunately, I believe I waited one day too long and was mistaken in timing on my part. No, that's fine. We will wait for a response. We'd be unlikely to move on the motion without taking a full case in our submissions. Okay. Thank you. Thank you. Mr. Siscoe has indicated we do have the motion. I'm sure you have it as well, and that we would invite a response. Yes, Your Honor. I think the response is due on the 12th. It's not due yet. Yeah, that's right. And we did not have a pre-filing meeting on that because I was on vacation. I guess they delayed me. That's right. I think if you would try to postpone it on a time basis, that would be helpful. Thank you. Of course. One of the issues I'd like to address, if I might, is that a couple things. We are contending that the conduct alleged does not rise to the level of litigation misconduct. It might be bad lawyering to shift the theory or to make one argument and then change your mind and make another argument. But it is not litigation misconduct. And throughout these proceedings, Judge Jensen, at least with the POM products, did not award attorneys fees in front of the filing of the complaint. But only after the Federal Circuit made a determination that, with regards to claim construction, I think the judge decided that perhaps he'd actually call it a day when they couldn't find a direct infringer. Other than that, what was viewed as now a simulation test that the Consumer Electronics Show, as opposed to the real McCoy, is advocating. And so, with regards to those POM devices, clearly the court felt that there was an adequate pre-filing investigation. Also, the lack of taking discovery on giving out an attorney to do so, again, is not litigation misconduct. It is, again, probably bad lawyering. But in context, there were 15 motions for summary judgment that this lawyer was trying to respond to. And it also had the opportunity to take discovery as well, right? But when you file a motion to compel a deposition, and then get it moved on, and then you go forward with the deposition. Again, I think that that would probably be bad lawyering. But I don't think it's litigation misconduct. The fact that you don't get the evidence that now you have a right to get, I don't know of any cases that say that that is litigation misconduct. But again, I think it's probably bad lawyering. Why did that happen? I don't know why that happened. But again, with regards to- I don't know whether this is reading the lines or perhaps a bit between the lines. But what I understood the district court's take on that was that this was part of an effort to keep the case alive by whatever means necessary, without really having a good faith intention to follow up on the means cited to keep the case alive. So that if that's the right way to view what was going on, then it isn't simply a case of bad lawyering and failing to follow up on opportunities to get evidence that was likely available, but rather an employee simply to avoid having a dispositive lawyer enter against the employee. But Judge Jensen did find that in any of these, all this attorney conduct constituted sanctionable conduct. The district court specifically said that these attorneys really didn't do anything wrong. They were justifying the war of attorneys against them. So it's kind of a contradiction here. If these are all things that attorneys are doing and they have the control over that, apart from the client, because these are all tactical decisions. Take a deposition, not take a deposition. You know, get the discovery or not. It seems to me that if this were really an exceptional case, these lawyers who made all these tactical decisions would have been found to be liable as well. But they were not because the district court made a specific finding that he did not believe that this conduct was the type of conduct that would be actionable, that would allow for the war of attorney suits. And on that point, it seems to us that, again, we're not saying that this is great lawyering. It's terrible lawyering. But, again, it's not the litigationless conduct that we're talking about where people are sanctioned and they violate court orders and held accountable for those court orders. Instead, we have a proceeding that lasted over a period of time that, you know, E-Pass did prevail before this court on one occasion, and the case was alive. But then there was a change in the evidence when Susan Langstroth said, oh, no, that demonstration you did in Las Vegas, that was really all a charade. It really wasn't real. It was only a proof of concept, despite what they said, because the language is pretty clear. It makes pretty clear that they were going to roll this thing out, and our client should have had kind of the right to be able to stop that kind of imminent infringement. And so it appears that all of these parties were working together to try to make these products work as a credit card machinery, and have a bunch of credit cards, and the Palm Source people, the Palm people, and Visa, that I think there's no doubt that they were all working to bring this about. But the reality of it is, I don't know why it's not in existence. I don't know if it's a bad business concept. For whatever reason, it never rolled out. But I believe that E-Pass had a good faith belief of going forward and trying to stop that, especially as the evidence to record shows. They're trying to negotiate this very profitable deal with Microsoft. So if that system would have rolled out infringing that patent, then it would have been catastrophic for E-Pass, which had the patent, which is really a right to exclude others. So the question is, should they have waited a little bit longer, waited until these things did roll out, and then filed suit? But that would have been too late. So they did file suit when they did. It would have been too late. Certainly, if there was infringement, the accused infringers wouldn't have achieved any non-investment rights. I understand that from a business standpoint, most businesses want to make something and license it and so forth. They don't want a lawsuit. Yeah, there are people out there that just want to sue people and get money for it. But if you look at E-Pass and the intent of E-Pass was to have a viable business that they'd be able to launch or license the visa and people at Microsoft, that was the whole idea. The whole idea of throwing that business model out of design. Now all you have is the right to bring a lawsuit and try to collect damages against somebody. Most business people don't like that kind of business. They're not designed for that. And so in this particular case, they made decisions. The lawyers made decisions. While probably tactically they were false, they lost the case. And so that's unfortunately the consequence that both the client and the lawyers bear. But it is not the type of litigation misconduct or bad faith that this court typically will look at and sustain attorney's fees for in a situation like that. And with that, I thank you for your time. And I hope that your concept of the case is not exceptional. Thank you. And you will provide us with a response to the case. Yes. Thank you. Thank you, counsel. The case is submitted.